IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DuPREE LAMONT ADKINS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DITOMOAS, et al.,<br><br>　　　　Defendants. | No. 2:22-CV-1650-DMC-P<br><br><br><br>ORDER |

　　　　Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Plaintiff's original complaint, ECF No. 1.

　　　　The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). This provision also applies if the plaintiff was incarcerated at the time the action was initiated even if the litigant was subsequently released from custody. See Olivas v. Nevada ex rel. Dep't of Corr., 856 F.3d 1281, 1282 (9th Cir. 2017). The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply,

concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard. Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner at California Medical Facility (CMF). ECF No. 1 at 3. Plaintiff names the following as defendants: (1) Ditomas, Chief Medical Officer/Official at CMF; (2) D. Cueva, Warden at CMF; (3) Ali, Captain at CMF; (4) Olmedo, Correctional Counselor I "ADA" at CMF; and J. Gary, ADA Coordinator at CMF. Id. at 3-4. Plaintiff is suing all Defendants individually and in their official capacities. Id. at 4. Plaintiff asserts two claims: a Fourteenth Amendment Equal Protection Claim and a claim under the First Amendment for the right to petition the government for a redress of grievances. Id. at 6, 11.

Plaintiff's first claim alleges he was, at all times relevant to this claim, specifically, from December 2, 2020, through December 12, 2020, housed in a mental health crisis bed (MHCB). Id. at 6. He contends that a MHCB has a ten-day maximum stay, and inmates are not allowed to participate in "canteen, quarterly packages, [or] personal property services[] programs" during the ten days in a MHCB. Id. Plaintiff states he was discharged after ten days and "met the eligible requirements to participate in the quarterly packages, canteen, personal property" because of his discharge and because Plaintiff did not commit any rule infraction that would have otherwise disqualified Plaintiff from participating in those services and programs. Id. Plaintiff states that Defendants Ditomas and Cueva were informed by Plaintiff's "inter, disciplinary, treatment team" (IDTT) during daily staff meetings that Plaintiff's housing conditions in a MHCB were "having an adverse effect on [his] mental health . . . by aggravating [his] major depression." Id. at 6-7. Despite this, Plaintiff alleges that Defendants Ditomas and

Cueva made an intentional decision to discriminate against Plaintiff by refusing to transfer him back to his housing unit. Id. at 7. Plaintiff argues that because MHCB cells do not have electricity, he was thereby deprived of electricity for his television and radio, and thus, he was unable to watch television or listen to radio stations and music on the radio. Id. This deprivation allegedly caused Plaintiff stress. Id.

Plaintiff states Defendants Ditomas and Cueva denied Plaintiff his phone book and address book, thus depriving him of the ability to call or write his loved ones. Id. Plaintiff also states Defendants Ditomas and Cueva denied him entry into canteen and quarterly package services and programs, such that he "couldn't buy . . . any zooms-zooms and wham-whams, soap, toothpaste, lotion." Id. Furthermore, Plaintiff alleges that the soap and toothpaste made him itch, was nauseating, and was rancid, which constituted cruel and unusual punishment. Id. Defendants Ditomas and Cueva were allegedly "put on actual notice that there [sic] acts were causing Plaintiff depression, mental anguish and suffering." Id. at 8. Further, Defendants Ditomas and Cueva were "put on notice of the risk to injury if they continued housing Plaintiff in 'MHCB' which is designed for 10 days." Id. In light of Plaintiff's depression worsening, Plaintiff states his IDTT increased his dosage of Zoloft and switched his "PRN to Zyprexa medication to help with anxiety, anger, and sleep." Id.

Plaintiff states that Anthony McGee, a "similarly-situated" inmate, was allowed quarterly packages, canteen and personal property, while Plaintiff was not afforded the same privileges. Id. Plaintiff alleges he was treated less favorably than the aforementioned Anthony McGee and five other unnamed, similarly situated inmates in the "Strategic Offender Management System," and that the reasons for this treatment did not relate to a legitimate penological purpose. Id. Plaintiff claims the above incident aggravated his major depression, anxiety, and stress, caused him to increase his dosage of the medication Zoloft, caused his medication to be switched from PRN to Zyprexia, and that Plaintiff was treated worse than similarly situated inmate patients. Id. at 6.

///

///

1       Plaintiff's second claim revolves around an alleged violation of his First
2  Amendment right to petition the government for a redress of grievances. Id. at 11. Plaintiff
3  allegedly filed an accommodation request that was converted into an Americans with Disabilities
4  Act appeal. Id. Plaintiff states that because of his filing, Defendants Ali and Olmedo, as well as
5  J. Gary, retaliated against Plaintiff by transferring him to housing that was "flooded with brown
6  poop, urine water." Id. at 12-13. Plaintiff alleges that Defendant Ali failed to ensure that each cell
7  was sterilized. Id. at 12.

8       Plaintiff next alleges that Defendants Olmedo and J. Gary secretly entered an
9  agreement with Defendant Ali to allow [Defendant Ali] to transfer to CSP-Solano with Plaintiff's
10 "protected conduct 'ADA-RAP' response" despite the running statute of limitations. Id. Plaintiff
11 alleges that Defendant Olmedo was legally required to assist Plaintiff in getting his protected
12 conduct from Defendant Ali, but when Plaintiff inquired about his "ADA-RAP" response,
13 Defendant Olmedo allegedly informed Plaintiff that Plaintiff needed to communicate with
14 Defendant Ali, despite Defendant Ali having transferred to another prison. Id. Plaintiff was
15 unable to contact Defendant Ali and informed Defendant Olmedo. Id. Plaintiff contends that as a
16 result, Plaintiff's protected right to petition the government for redress was chilled, and that
17 Plaintiff was forced to file this complaint or risk an expired statute of limitations. Id. at 13.
18 Plaintiff also makes note of the actions of J. Gary and alleges that J. Gary acted with retaliatory
19 animus that chilled Plaintiff's protected right to petition the government. Id.
20 / / /
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

## II. DISCUSSION

Plaintiff presents cognizable claims of retaliation and unconstitutional conditions of confinement. Plaintiff's equal protection claim fails because he does not allege that the discrimination resulted from his membership in a specific class. Plaintiff will be granted leave to amend.

### A. Equal Protection

Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose. See San Antonio School District v. Rodriguez, 411 U.S. 1 (1972). Prisoners are protected from invidious discrimination based on race. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Racial segregation is unconstitutional within prisons save for the necessities of prison security and discipline. See Cruz v. Beto, 405 U.S. 319, 321 (1972) (per curiam). Prisoners are also protected from intentional discrimination on the basis of their religion. See Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997). Equal protection claims are not necessarily limited to racial and religious discrimination. See Lee v. City of Los Angeles, 250 F.3d 668, 686-67 (9th Cir. 2001) (applying minimal scrutiny to equal protection claim by a disabled plaintiff because the disabled do not constitute a suspect class); see also Tatum v. Pliler, 2007 WL 1720165 (E.D. Cal. 2007) (applying minimal scrutiny to equal protection claim based on denial of in-cell meals where no allegation of race-based discrimination was made); Harrison v. Kernan, 971 F.3d 1069 (9th Cir. 2020) (applying intermediate scrutiny to claim of discrimination on the basis of gender).

In order to state a § 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that defendants acted with intentional discrimination against plaintiff, or against a class of inmates which included plaintiff, and that such conduct did not relate to a legitimate penological purpose. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (holding that equal protection claims may be brought by a "class of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985).

Plaintiff alleges he was treated differently than similarly situated prisoners, but Plaintiff does not identify a class he is a part of that was the cause for the disparate treatment. See ECF No. 1 at 8. Because the complaint does not identify a class the Plaintiff is a part of, it does not present a cognizable equal protection claim. See Village of Willowbrook, 528 U.S. at 546.

### B. Conditions of Confinement

"The Constitution 'does not mandate comfortable prisons.'" Farmer, 511 U.S. at 832 (quoting Rhodes, 452 U.S. at 349); see also Hallett v. Morgan, 296 F.3d 732, 745 (9th Cir. 2002); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982), abrogated on other grounds by Sandin v. Conner, 515 U.S. 472 (1995). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. See Rhodes, 452 U.S. at 347; Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006); Osolinski v. Kane, 92 F.3d 934, 937 (9th Cir. 1996); Jordan v. Gardner, 986 F.2d 1521, 1531 (9th Cir. 1993) (en banc). Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint, 801 F.2d at 1107; see also Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000); Wright v. Rushen, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

When determining whether the conditions of confinement meet the objective prong of the Eighth Amendment analysis, the court must analyze each condition separately to determine whether that specific condition violates the Eighth Amendment. See Toussaint, 801 F.2d at 1107; Wright, 642 F.2d at 1133. "Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise – for example, a low cell temperature at night combined with a failure to issue blankets." Wilson v. Seiter, 501 U.S. 294, 304 (1991); see also Thomas v. Ponder, 611 F.3d 1144, 1151 (9th Cir. 2010); Osolinski, 92 F.3d at 938-39; Toussaint, 801 F.2d at 1107; Wright, 642 F.2d at 1133. When considering the conditions of confinement, the court should also consider the amount of time to which the prisoner was subjected to the condition. See Hutto v. Finney, 437 U.S. 678, 686-87 (1978); Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005).

Plaintiff lists the privileges he was denied at MHCB, including entry to canteen and quarterly package services and programs. ECF No. 1 at 7. To present an Eighth Amendment claim, Plaintiff must show he was denied basic necessities. See Toussaint, 801 F.2d at 1107. Plaintiff's complaint shows only that, for a short time, he was denied certain privileges and so falls short of establishing an Eighth Amendment claim for his time at MHCB.

However, Plaintiff also discusses a period in which he was transferred into housing "flooded with brown poop, urine water." ECF No. 1 at 12-13. Plaintiff alleges that Defendant Ali allowed this to happen by failing to ensure his cell was sterilized. Id. at 12. Such conditions give rise to an Eighth Amendment claim.

### C. Retaliation

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. See Rhodes, 408 F.3d at 568.

As to the chilling effect, the Ninth Circuit in Rhodes observed: "If Rhodes had not alleged a chilling effect, perhaps his allegations that he suffered harm would suffice, since harm that is more than minimal will almost always have a chilling effect." Id. at n.11. By way of example, the court cited Pratt in which a retaliation claim had been decided without discussing

chilling. See id. This citation is somewhat confusing in that the court in Pratt had no reason to discuss chilling because it concluded that the plaintiff could not prove the absence of legitimate penological interests. See Pratt, 65 F.3d at 808-09. Nonetheless, while the court has clearly stated that one of the "basic elements" of a First Amendment retaliation claim is that the adverse action "chilled the inmates exercise of his First Amendment rights," id. at 567-68, see also Resnick, 213 F.3d at 449, the comment in Rhodes at footnote 11 suggests that adverse action which is more than minimal satisfies this element. Thus, if this reading of Rhodes is correct, the chilling effect element is essentially subsumed by adverse action.

Plaintiff alleges that because he filed grievances, J. Gary retaliated against him by transferring him into a cell flooded with contaminated water. ECF No. 1 at 12-13. Plaintiff pleads a cognizable retaliation claim.

### III. CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Therefore, if Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete. See Local Rule 220. An amended complaint must be complete in itself without reference to any prior pleading. See id.

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

///

///

      Because the complaint appears to otherwise state cognizable claims, if no amended complaint is filed within the time allowed therefor, the Court will issue findings and recommendations that the claims identified herein as defective be dismissed, as well as such further orders as are necessary for service of process as to the cognizable claims.

      Accordingly, IT IS HEREBY ORDERED that Plaintiff may file a first amended complaint within 30 days of the date of service of this order.

Dated:  August 15, 2023

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE