1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    DuPREE LAMONT ADKINS,                    No. 2:22-CV-1650-DMC-P

12                    Plaintiff,

13          v.                                 ORDER

14    DITOMOAS, et al.,                        and

15                    Defendants.              FINDINGS AND RECOMMENDATIONS

16

17          Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18    42 U.S.C. § 1983. Pending before the Court is Defendants' motion to sever unrelated claims. See

19    ECF No. 19.  Plaintiff has not filed an opposition.

20          Federal Rule of Civil Procedure 18(a) limits the joinder of claims, whereas Federal

21    Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit. Rule 18(a) states:

22    "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it

23    has against an opposing party." Rule 20(a)(2) states:  "[p]ersons . . . may be joined in one action

24    as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the

25    alternative with respect to or arising out of the same transaction, occurrence, or series of

26    transactions or occurrences; and (B) any question of law or fact common to all defendants will

27    arise in the action." Courts have recognized that when multiple parties are named, the analysis

28    under Rule 20 precedes that under Rule 18. See Herndon v. Mich. Dep't of Corr., 2021 WL

1

1559156 at *2 (W.D. Mich. April 12, 2021).

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18 . . . .
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

Id. (citing 7 Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1655 (3d ed. 2001), quoted in Proctor v. Applegate, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), and Garcia v. Munoz, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); see also United States v. Mississippi, 380 U.S. 128, 142–43 (1965)).

Permissive joinder under Rule 20 "is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency, 558 F.2d 914, 917 (9th Cir. 1997). The purpose of Rule 20 is to address the "broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties, and remedies is strongly encouraged." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966). Rule 20 sets forth two specific requirements for permissive joinder: "(1) a right to relief must be asserted by, or against, each plaintiff or defendant relating to or arising out of the same transaction or occurrence or series of transactions or occurrences; and (2) some question of law or fact common to all parties must arise in the action." Desert Empire Bank v. Ins. Co. of N. Am., 623 F.2d 1371, 1375 (9th Cir. 1980) (citing League to Save Lake Tahoe, 558 F.2d at 917).

As to the first requirement, courts assess the facts of each case individually to determine whether joinder is sensible considering the underlying policies of permissive party joinder. Coughlin v. Rogers, 130 F.3d 1348, 1350 (9th Cir. 1997). "The 'same transaction' requirement of Rule 20 refers to 'similarity in the factual background of a claim; claims that arise out of a systematic pattern of events' and have a 'very definite logical relationship.'" Hubbard v. Hougland, 2010 WL 1416691, at *7 (E.D. Cal. Apr. 5, 2010) (quoting Bautista v. Los Angeles County, 216 F.3d 837, 842-843 (9th Cir. 2000)). Additionally, "the mere fact that all [of a plaintiff's] claims arise under the same general law does not necessarily establish a common

2

1   question of law or fact." Coughlin, 130 F.3d at 1351.

2          As to the second requirement, commonality under Rule 20 is not a particularly

3   stringent test. See Johnson v. Shaffer, 2013 WL 140115, at *2 (E.D. Cal. Jan. 10, 2013) (citing

4   Bridgeport Music, Inc. v. 11 C Music, 202 F.R.D. 229, 231 (M.D. Tenn. 2001)). The Rule

5   requires only a single common question, not multiple common questions. Fed. R. Civ. P. 20 ("any

6   question of law or fact common to . . ."). "The common question may be one of fact or of law and

7   need not be the most important or predominant issue in the litigation." Johnson, 2013 WL

8   140115, at *2 (citing Mosley v. Gen. Motors Corp., 497 F.2d 1330, 1333 (8th Cir. 1974)).

9   And even if a court finds that the requirements have been met, "a district court must examine

10  whether permissive joinder would 'comport with principles of fundamental fairness' or would

11  result in prejudice to either side." Coleman v. Quaker Oats Company, 232 F.3d 1271, 1296 (9th

12  Cir. 2000) (citing Desert Empire Bank, 623 F.2d at 1375 (finding that the district court did not

13  abuse its discretion when it severed certain plaintiff's claims without finding improper joinder)).

14         Under Rule 20(b), the district court may sever claims or parties to avoid prejudice.

15  Fed. R. Civ. P. 20(b). Courts have also exercised their discretion to sever where "[i]nstead of

16  making the resolution of [the] case more efficient . . . joinder would instead confuse and

17  complicate the issues for all parties involved." Rodriguez v. Tilton, 2013 WL 1163796, at *6

18  (E.D. Cal. Mar. 20, 2013) (quoting Wynn v. Nat'l Broad. Co., 234 F. Supp. 2d 1067, 1088 (C.D.

19  Cal. 2002) (finding that even where Rule 20 requirements for joinder are satisfied, the court may

20  exercise its discretion "to sever for at least two reasons: (1) to prevent jury confusion and judicial

21  inefficiency, and (2) to prevent unfair prejudice to the [defendants]")) (citing Coleman, 232 F.3d

22  at 1350).

23         If, however, the requirements for permissive joinder are not satisfied, courts may

24  look to Rule 21. Coughlin, 130 F.3d at 1350. Under Rule 21, where a court finds misjoinder, it

25  may "drop a party" or "sever any claim against a party" as it considers just, but it may not dismiss

26  the entire action. Fed. R. Civ. P. 21. In other words, where there is misjoinder, a court "has two

27  remedial options: (1) misjoined parties may be dropped 'on such terms as are just'; or (2) any

28  claims against misjoined parties 'may be severed and proceeded with separately.'" DirecTV, Inc.

3

v. Leto, 467 F.3d 842, 845 (3d Cir. 2006); see, e.g., Gilmore v. Bauder, No. 1:19-CV-01229-NONE-SKO, 2021 WL 634731 at *3 (E.D. Cal. Feb. 18, 2021) (dismissing severed claims without prejudice); see also Harrison v. Linde, No. 2:12-CV-2000 KJM CKD, 2013 WL 3872833 at *1 (E.D. Cal. July 25, 2013) (directing the clerk of court to assign a new case number for the severed claims). In determining which of the two remedial options should be applied, the court should consider the following factors, inter alia: (1) the relevant statute of limitations; (2) where the parties are in the discovery process; and (3) the past and future expenditures of both the court and the parties. See Robinson v. Geithner, No. 1:05-CV-01258-LJO-SKO, 2011 WL 66158 at *10 (E.D. Cal. Jan. 10, 2011). The remedial option the court chooses could have critical effects.

For example, "[w]hen a court 'drops' a defendant under Rule 21, that defendant is dismissed from the case without prejudice." DirecTV, Inc., 467 F.3d at 845 (citing Publicker Indus., Inc. v. Roman Ceramics Corp., 603 F.2d 1065, 1068 (3d Cir. 1979)); see also Elmore v. Henderson, 227 F.3d 1009, 1011–12 (7th Cir. 2000) (Posner, J.). "When that occurs, the 'statute of limitations is not tolled' because we treat the initial complaint 'as if it never existed." DirecTV, Inc., 467 F.3d at 845 (citing Brennan v. Kulick, 407 F.3d 603, 606 (3d Cir. 2005). However, "when a court 'severs' a claim against a defendant under Rule 21, the suit simply continues against the severed defendant in another guise. The statute of limitations is held in abeyance, and the severed suit can proceed so long as it initially was filed within the limitations period." DirecTV, Inc., 467 F.3d at 845 (citing White v. ABCO Eng'g Corp., 199 F.3d 140, 145 n. 6 (3d Cir. 1999)); see also Jenkins v. Lares, No. 2:13-CV-2273-DB, 2017 WL 3381809 at *6-7 (E.D. Cal. Aug. 7, 2017).

Additionally, severance or dismissal of misjoined parties in cases brought by inmates under 28 U.S.C. § 1915(g) ensures that prisoners pay the required filing fees for each unrelated claim that should be brought in separate actions. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). The inmate plaintiff in George brought a 50-claim, 24-defendant lawsuit and sought one fee waiver for the entire case. Id. In severing the case, the Court of Appeals for the Seventh Circuit noted that the inmate "was trying not only to save money, but also to dodge [28 U.S.C. § 1915(g)]." Id. Thus, the rule requiring severance of unrelated claims against unrelated

defendants "is not only intended to avoid confusion that arises out of bloated lawsuits, but also to prevent prisoners from circumventing the three strikes rule under the Prison Litigation Reform Act." Blair v. CDCR, et al., No. 1:14-cv-01156-LJO-SAB, 2016 WL 5660320, at *14 (E.D. Cal. Jul. 15, 2016), report and recommendation adopted by, No. 1:14-cv-01156-LJO-SAB, 2016 WL 5470190 (E.D. Cal. Sept. 28, 2016).

The actual severance of claims may be effectuated by assigning claims to case numbers. See Jenkins, 2017 WL 3381809 at 7*. For example, in Jenkins the court severed the case into four separate actions, i.e., four separate claims. Id. The court assigned the case number of the original action to the plaintiff's first claim. Id. The court then directed the clerk of court to assign the three remaining claims to three different case numbers. Id.

## I. BACKGROUND

### A. Procedural History

Plaintiff initiated this action with a pro se complaint asserting claims against Defendants Ditomas, Cueva, Cavagnolo (erroneously sued as "Ali"), Olmedo, and Gary. See ECF No. 1. On August 15, 2023, the Court issued an order granting Plaintiff leave to amend to cure defects in Plaintiff's claims. See ECF No. 10. Plaintiff then filed a first amended complaint reasserting claims against all defendants. See ECF No. 11. On June 14, 2024, the Court issued an order determining that the first amended complaint was appropriate for service on all five defendants. See ECF No. 12. Defendants Ditomas, Cueva, Olmedo, Gary, and Cavagnolo waived service and filed the pending motion to sever claims in response to the first amended complaint. See ECF No. 19.

### B. Plaintiff's Allegations

Plaintiff is a prisoner at California Medical Facility (CMF). See ECF No. 11, pg. 3. Plaintiff names the following as defendants: (1) Ditomas, Chief Medical Officer/Official at CMF; (2) D. Cueva, Warden at CMF; (3) Ali, Captain at CMF; (4) Olmedo, Correctional Counselor I "ADA" at CMF; and (5) J. Gary, ADA Coordinator at CMF. Id. at 3-4. Plaintiff is suing all Defendants individually and in their official capacities. Id. at 4. Plaintiff asserts two

5

1  claims: a Fourteenth Amendment Equal Protection Claim and a claim under the First Amendment

2  for the right to petition the government for a redress of grievances. Id. at 6, 12.

3        Plaintiff's first claim alleges he was, always relevant to this claim, specifically,

4  from December 2, 2020, through December 12, 2020, housed in a mental health crisis bed

5  (MHCB). Id. at 6. He contends that a MHCB has a ten-day maximum stay, and inmates are not

6  allowed to participate in "canteen, quarterly packages, [or] personal property service [] programs"

7  during the ten days in a MHCB. Id. Plaintiff states he was discharged after ten days and "met the

8  eligible requirements to participate in the quarterly packages, canteen, personal property" because

9  of his discharge and because Plaintiff did not commit any rule infraction that would have

10  otherwise disqualified Plaintiff from participating in those services and programs. Id. Plaintiff

11  states that Defendants Ditomas and Cueva were informed by Plaintiff's "inter, disciplinary,

12  treatment team" (IDTT) during daily staff meetings that Plaintiff's housing conditions in a

13  MHCB were "having an adverse effect on [his] mental health . . . by aggravating [his] major

14  depression." Id. at 7. Despite this, Plaintiff alleges that Defendants Ditomas and Cueva made an

15  intentional decision to discriminate against Plaintiff by refusing to transfer him back to his

16  housing unit while making numerous other transfers. Id. Plaintiff argues that he was discriminated

17  against by Ditomas and Cueva because Plaintiff is a member of the protected Coleman class. Id.

18  Plaintiff argues that because MHCB cells do not have electricity, he was thereby deprived of

19  electricity for his television and radio, and thus, he was unable to watch television or listen to

20  radio stations and music on the radio. Id. This deprivation allegedly caused Plaintiff stress. Id.

21        Plaintiff states Defendants Ditomas and Cueva denied Plaintiff his phone book and

22  address book, thus depriving him of the ability to call or write his loved ones. Id. Plaintiff also

23  states Defendants Ditomas and Cueva denied him entry into canteen and quarterly package

24  services and programs, such that he "couldn't buy . . . any zoom-zooms and wham-whams, soap,

25  toothpaste, lotion, and deodorant." Id. Furthermore, Plaintiff alleges that the soap and toothpaste

26  made him itch, was nauseating, and was rancid, which constituted cruel and unusual punishment.

27  Id. at 8. Defendants Ditomas and Cueva were allegedly "put on actual notice that there [sic] acts

28  were causing Plaintiff depression, mental anguish and suffering." Id. Further, Defendants

1   Ditomas and Cueva were "put on notice of the risk to injury if they continued housing Plaintiff in

2   'MHCB' which is designed for 10 days." Id. Considering Plaintiff's depression worsening,

3   Plaintiff states his IDTT increased his dosage of Zoloft and switched his "PRN to Zyprexa

4   medication to help with anxiety, anger, and sleep." Id.

5          Plaintiff states that Anthony McGee, a "similarly-situated" inmate, and five other

6   Coleman class inmates were allowed quarterly packages, canteen and personal property, while

7   Plaintiff was not afforded the same privileges and was "singled out" by Defendants Ditomas and

8   Cueva. Id. Plaintiff alleges he was "intentionally treated less favorably than 'similarly-situated'

9   inmates in the 'Strategic Offender Management System,'" and that the reasons for this treatment

10  did not relate to a legitimate penological purpose. Id. at 9. Plaintiff claims the above incident

11  aggravated his major depression, anxiety, and stress, caused him to increase his dosage of the

12  medication Zoloft, caused his medication to be switched from PRN to Zyprexa, and that Plaintiff

13  was treated worse than similarly situated inmate patients. Id. at 6.

14         Plaintiff's second claim revolves around an alleged violation of his First

15  Amendment right to petition the government for a redress of grievances. Id. at 12. Plaintiff

16  allegedly filed an accommodation request that was converted into an Americans with Disabilities

17  Act appeal. Id. Plaintiff states that because of his filing, Defendants Ali and Olmedo, as well as J.

18  Gary, retaliated against Plaintiff by transferring him to housing that was "flooded with brown

19  poop, urine water." Id. at 12-13. Plaintiff alleges that Defendant Ali failed to ensure that each cell

20  was sterilized. Id. at 12.

21         Plaintiff next alleges that Defendants Olmedo and J. Gary secretly entered an

22  agreement with Defendant Ali to allow [Defendant Ali] to transfer to CSP-Solano with Plaintiff's

23  "protected conduct 'ADA-RAP' response" despite the running statute of limitations. Id. at 14.

24  Plaintiff alleges that Defendant Olmedo was legally required to assist Plaintiff in getting his

25  protected conduct from Defendant Ali, but when Plaintiff inquired about his "ADA-RAP"

26  response, Defendant Olmedo allegedly informed Plaintiff that Plaintiff needed to communicate

27  with Defendant Ali, despite Defendant Ali having transferred to another prison. Id. at 15. Plaintiff

28  was unable to contact Defendant Ali and informed Defendant Olmedo. Id. Plaintiff contends that

1   as a result, Plaintiff's protected right to petition the government for redress was chilled, and that

2   Plaintiff was forced to file this complaint or risk an expired statute of limitations. <u>Id.</u> at 16.

3   Plaintiff also makes note of the actions of J. Gary and alleges that J. Gary acted with retaliatory

4   animus that chilled Plaintiff's protected right to petition the government. <u>Id.</u>

5

6                                    **II. DISCUSSION**

7          The Court determined that the first amended complaint states cognizable claims as

8   follows: (1) an Eighth Amendment conditions-of-confinement claim against Defendant Ali

9   [Cavagnolo]; (2) First Amendment retaliation claims against Defendants Gary and Olmedo, and

10  Fourteenth Amendment equal protection claims against Defendants Ditomas and Cueva. <u>See</u> ECF

11  No. 12.  In the pending motion to sever, Defendants argue that Plaintiff's claims have been

12  improperly joined.  <u>See</u> ECF No. 19.  According to Defendants:

13              . . . [T]he three claims on which the case proceeds are based on
                discrete factual underpinnings and legal bases, and no two claims proceed
14              against the same Defendant: Plaintiff alleges that Defendants Cueva and
                DiTomas discriminated against him by denying him privileges while he
15              was in MHCB housing, Defendant Cavagnolo [Ali] subjected him to
                unconstitutional conditions of confinement sometime afterward by failing
16              to ensure that his later-assigned cell was cleaned and sterilized, and
                Defendants Garry and Olmedo-Corbett hindered his pursuit of relief
17              through his RAR. (FAC at 6-18; *see* ECF No. 12 at 3.)

18          ECF No. 19, pg. 5.

19          The Court agrees.  Here, Plaintiff brings separate claims against separate

20  defendants occurring at different times. The claims brought against the defendants are very

21  different, including claims against Defendant Cueva and DiTomas for discrimination because

22  they allegedly denied Plaintiff privileges, claims against Defendant Cavagnolo [Ali] for allegedly

23  failing to provide a reasonable accommodation request, and claims against Defendant Cavagnolo

24  for allegedly failing to ensure a clean cell. These claims did not arise out of the same transaction

25  or occurrence, as required by Rule 20, they lack a definite, logical relationship, and they do not

26  share any factual or legal nucleus.  <u>See</u> <u>Jefferson v. Villanueva</u>, 202 WL 551597, *7 (C. Dist. Cal.

27  2020) (finding improperly joinder of "claims arising out of several distinct incidents" including

28  "claims against [some defendants] aris[ing] our of complaints regarding Plaintiff's conditions of

confinement," "claims against [another defendant] aris[ing] out of. . . retaliation for filing a grievance regarding [a strip] search," and "claims against [still other defendants] ari[ing]our of access to courts issues").  The Court finds that permissive joinder of the named defendants would not comport with the principles of fundamental fairness and would confuse and complicate the issues for all parties. The Court will recommend that Defendants' motion to sever be granted and that the claims proceed as separate actions.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## III. CONCLUSION

Based on the foregoing, the undersigned orders and recommends as follows:

1. It is ORDERED that the Clerk of the Court is directed to randomly assign a District Judge to this case.

2. It is RECOMMENDED that Defendants' motion to sever, ECF No. 19, be granted.

3. It is RECOMMENDED that this action proceed on Plaintiff's first amended complaint as to his claims against Defendants Ditomas and Cueva and that the remaining defendants be terminated from this action.

4. It is RECOMMENDED that Defendants Ditomas and Cueva be directed to file an answer in this action.

5. It is RECOMMENDED that the remaining claims of Plaintiff's first amended complaint be filed into two new separate actions, with one such action proceeding as to Plaintiff's claims against Defendant Cavagnolo [Ali] and a separate and further action proceeding as to Plaintiff's claims against Defendants Gary and Olmedo, with both new actions to be assigned to the same judges as the current action.

6. It is RECOMMENDED that Defendants Cavagnolo [Ali], Gary, and Olmedo, be directed to file answers in the two new actions.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  June 26, 2025

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

10